## RUSSELL v. CENTRAL LABOR UNION et al.

(District Court, E. D. Illinois. October 1, 1924.)

No. 38.

Courts ⟨⟶315—Voluntary association does not possess attribute of citizenship as ground of jurisdiction of federal court.

Though a voluntary organization as a labor union is accredited with such legal entity as to be suable, it does not possess the attributes of citizenship, apart and separate from its members, to the extent that such citizenship may be invoked as a ground for jurisdiction of the United States court on the ground of diversity of citizenship.

At Law. Action by Isabel Russell against Central Labor Union and others. On demurrer to replications. Demurrer sustained.

Cassels, Potter & Bentley, of Chicago, Ill., and Charles Troup, of Danville, Ill., for plaintiff.

Acton, Acton & Snyder, of Danville, Ill., A. W. Kerr, of Chicago, Ill., and Geo. R. Stone, of Marion, Ill., for defendants.

LINDLEY, District Judge. This is a suit against six labor unions and certain other defendants to recover damages for an alleged tort. The jurisdiction of this court is dependent upon diversity of citizenship.

In her declaration the plaintiff alleges that she is a citizen of the state of Missouri, that each of the labor unions are voluntary associations, who are citizens of Illinois, and the members of whom are citizens of Illinois, and that they are voluntary organiza-tions of such character as to be suable. These alleged associations have filed separate pleas to the jurisdiction of the court, each alleging that not all of its members are citizens of the state of Illinois, but that in each instance certain members are citizens of states other than Illinois. Two of the pleas aver that the members who are alleged to be nonresidents of Illinois are citizens of the state of Missouri. To each of these pleas the plaintiff has filed a replication averring that each of the said associations is domiciled within the state of Illinois, has its office within the said state, functions therein, and confines its activities entirely to the said state. The replications further allege that the citizenship of the individual members of the associations is immaterial. To each of these replications the defendant associations have interposed a demurrer.

The question thus presented is whether or not a voluntary association, suable in the federal court, under the decision of the Supreme Court of the United States in the case of United Mine Workers of America et al. v. Coronado Coal Co. et al., 259 U. S. 344, 42 Sup. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, may be brought into the United States District Court as party defendant upon a showing that it is domiciled and has its place of business within the state, and confines its activities to the said state, independent of the citizenship of its individual members, where the jurisdiction of the court depends solely upon an averment that the plaintiff is a citizen of a state other than that in which the associations are domiciled.

In the case of United Mine Workers of America v. Coronado Coal Co., supra, the Supreme Court distinctly and definitely held that such voluntary organizations are suable in the federal court, evidently reasoning that the entity created voluntarily by the members, in perfecting their organization, and carrying on multiplicitous activities through boards of directors and regularly elected officers, was such, in the light of federal legislation regarding such associations, so distinct and separate from the entities of its individual members that the courts will recognize the same and treat it as a distinct and separate legal entity apart from that of its individual members. Can we go a step further, and say that it follows logically that such a distinct legal entity is a citizen within the meaning of that word as recognized by the Supreme Court of the United States, in its various defini-

tions of that term, in cases involving jurisdiction?

In Lafayette Ins. Co. v. French, 18 How. 404, 405, 15 L. Ed. 451, 452, which was an action brought by citizens of Ohio in the Circuit Court of the United States for the District of Indiana, the declaration described the defendant as the "Lafayette Insurance Company, a citizen of the state of Indiana." The Supreme Court there said:

"This averment is not sufficient to show jurisdiction. It does not appear from it that the Lafayette Insurance Company is a corporation, or, if it be such, by the law of what state it was created. The averment that the company is a citizen of the state of Indiana can have no sensible meaning attached to it. *This court does not hold that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a state within the meaning of the Constitution.* And therefore, if the defective averment in the declaration had not been otherwise supplied, the suit must have been dismissed." (The italics are those of this court.)

In the case of Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800, action was brought in the Circuit Court of the United States by the United States Express Company, upon an averment that the said company was a joint-stock company organized under a law of the state of New York and a citizen of that state. The Supreme Court held that these averments were not sufficient to show such diversity of citizenship as would under the Constitution confer jurisdiction upon the Federal Court. The court there said:

"The company may have been organized under the laws of the state of New York, and may be doing business in that state, and yet all the members of it may not be citizens of that state. The record does not show the citizenship of Barney, or of any of the members of the company. *They are not shown to be citizens of some state other than Illinois.*"

In the case of Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 842, it was held that a limited partnership association created under Pennsylvania laws, although declared by the state statute to be a citizen of the state, and held by the courts of Pennsylvania to have the right to sue, and to be subject to suit, was not to be held a citizen of that state within the meaning of the clause of the federal Constitution which extends the judicial powers of the United States to controversies between citizens of different states, and that the citizenship of the individual members of the association thus created must be alleged in a suit by that association in a federal court, where jurisdiction depends upon diverse citizenship of the parties. The court there said:

"It has been suggested that the plaintiffs are entitled to sue, and may be sued, by their association name. 1 Brightly's Purdon's Digest, Pa. (12th Ed.) 1088, title 'Joint-Stock Companies,' § 16. But the capacity to sue and be sued by the name of the association does not make the plaintiffs a corporation within the rule that a suit by or against a corporation in its corporate name in a court of the United States is conclusively presumed to be one by or against citizens of the state creating the corporation. * * * The rule that for purposes of jurisdiction, and within the meaning of the clause of the Constitution extending the judicial powers of the United States to controversies between citizens of different states, a corporation was to be deemed a citizen of the state creating it, has been so long recognized and applied that it is not now to be questioned. No such rule, however, has been applied to partnership associations, although such associations may have some of the characteristics of a corporation. When the question relates to the jurisdiction of a Circuit Court of the United States as resting on the diverse citizenship of the parties we must look in the case of a suit by or against a partnership association to the citizenship of the several persons composing such association."

In Thomas v. Ohio State University Trustees, 195 U. S. 207, 25 Sup. Ct. 24, 49 L. Ed. 160, the defendant was the board of trustees of the Ohio State University, created by statute of Ohio, under which it was fully authorized and empowered to sue and to be sued, to contract and be contracted with, to use a common seal, to adopt by-laws, and to have the general supervision of the property of the University. Thus there had been established by statute, by solemn enactment by the Legislature of the commonwealth, a distinct legal entity, yet the Supreme Court held that such a board was not suable in the United States court, where the jurisdiction depended upon diverse citizenship, unless the pleadings also alleged that each individual trustee was a citizen of Ohio. The court held that the board was suable as a distinct creature of the law, but that before the federal court jurisdiction could be invoked it must appear that the in-

dividual members, whose joint co-operation by virtue of the statute composed this creature, were citizens of a state diverse from that of the opposing party, before diversity of citizenship could be said to exist. The court there said:

"To the second question our answer is that, as the board was entitled to sue and be sued by their collective name, and would be bound by any judgment rendered against it in that name, the jurisdiction of the Circuit Court would have sufficiently appeared, so far as the pleadings were concerned, without bringing the several persons constituting the board before the court as defendants, *provided the bill had contained the additional allegation that each individual trustee was a citizen of Ohio.*"

The same rule was followed, with the same reasoning, in Carnegie & Co. v. Hulbert, 53 Fed. 10, 3 C. C. A. 391, and Ralya v. Armour & Co. (C. C.) 102 Fed. 530. In O'Neil v. Co-operative League of America, 278 Fed. 737, the court held that an unincorporated association has no citizenship, by reason of its organization, and that its citizenship for jurisdictional purposes is dependent upon that of its members, and that where the members of the association are citizens of another district, in the same state, the court has no jurisdiction.

It appears, therefore, that the Supreme Court of the United States has announced the law as being that a voluntary association, under such circumstances as existed in the Coronado Case, is suable in the United States courts, but that no legal entity, though suable, may invoke the jurisdiction of the court upon the ground of diverse citizenship, unless it appears that the individual members comprising this entity are citizens of states other than those of the opposing parties, except that corporations created by statute of the various states, and of such character that the individual stockholders thereof have only participating interests in capital stock, and have no legal title to the property of the corporation, are to be treated as citizens. The Coronado Case was a step in advance of prior decisions, in that it definitely decided that voluntary, unincorporated associations may be · sued. It may be that the logical conclusion from such a holding is that such an association possesses the attributes of citizenship separate and apart from its members, to the extent that such citizenship may be invoked as a ground for jurisdiction of the United States court upon the ground of diversity of citizenship; but, if that is to be the law, it is plain that it can become the law only by a modification of its former holdings by the Supreme Court.

In the case of Thomas v. Ohio State University Trustees, supra, the Supreme Court recognized that the board of trustees was a distinct legal entity created by legislation, capable of suing and being sued, and yet it was held that the federal courts had no jurisdiction, upon the ground of diversity of citizenship over such trustees, unless it appeared that the individual members were citizens of the state of Ohio, the opposing party being a citizen of Michigan. There is no difference in principle between a distinct legal existence created by statute and that given force by the Supreme Court under the doctrine of the common law, in view of the progress of modern legislation and industrial development. If modern industrial conditions are such that another step forward in the law governing voluntary associations is to be made, and prior existing decisions of the Supreme Court are thus to be distinguished, it would seem incumbent upon this court to leave such act to the court which has in its prior decisions exhibited only a contrary conception of the law.

It is argued that, prior to 1844, corporations were not regarded as possessing the attributes of citizenship independent from that of their stockholders, and that the step forward then taken, recognizing them as separate entities and granting jurisdiction, upon the ground of diversity of citizenship, where the residence of the corporation was diverse to that of the opposing party, was only a forerunner of an equivalent development in the law governing voluntary associations. The logic of such reasoning is not without force, but such positive modification of the law should be made by the Supreme Court.

It follows, therefore, that the demurrer must be sustained. Such will be the order of the court.